IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CURTIS J. WILLIAMS, | | |
| | Plaintiff, | No. CIV S-06-0437 GEB DAD P |
| | vs. | |
| J. ROHLFING, M.D., | | <u>ORDER AND</u> |
| | Defendant. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| _____/ | | |

      Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. The matter is before the court on defendant Rohlfing's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed a timely opposition to the motion.[1] Defendant has filed a timely reply.

**BACKGROUND**

      On March 2, 2006, plaintiff commenced this action by filing a complaint alleging that defendant Rohlfing had been deliberately indifferent to plaintiff's serious medical needs.

---

[1] Plaintiff's opposition does not comply with Local Rule 56-260. Plaintiff did not reproduce and admit or deny each fact itemized in defendant's statement of undisputed facts. Nor did plaintiff present his own concise statement of disputed facts, as permitted, or the statement of undisputed facts required for a counter-motion for summary judgment. Nevertheless, in the interests of justice, the court has read and considered plaintiff's opposition.

1

Specifically, plaintiff alleges that he has suffered from chronic knee pain since his arrival at High Desert State Prison and that from 2003 to 2005, he saw defendant Rohlfing, Dr. Lowell-Brown, Dr. James, and Dr. Dial for treatment of that condition. During these medical appointments the doctors provided him with ACE bandages, pain medication, and instructions on exercises for his knee. Defendant Rohlfing also ordered x-rays of plaintiff's knee, and Dr. Lowell-Brown and Dr. Dial requested a neoprene brace for plaintiff's knee.

Plaintiff alleges that on three occasions the "chrono committee" denied Dr. James and Dr. Dial's requests that plaintiff be provided a neoprene brace for his knee. Plaintiff further alleges that defendant Rohlfing, a board certified orthopedic specialist, is the main authority on the chrono committee who determines whether such requests are approved or denied.

Plaintiff concludes that defendant Rohlfing's refusal to provide him with adequate care for his knee, including his refusal to provide plaintiff a neoprene brace, violates the Eighth Amendment. Plaintiff requests compensatory damages in the amount of $50,000 and punitive damages in the amount of $50,000.

At screening the court determined that plaintiff's complaint appeared to state cognizable claims for relief against defendant Rohlfing, and in due course, the United States Marshal served plaintiff's complaint on him. On February 13, 2007, defendant filed his answer. On February 16, 2007, this court issued a discovery order. On January 25, 2008, defendant filed the pending motion for summary judgment, arguing that the evidence presented in support of the motion establishes that he was not deliberately indifferent to plaintiff's medical needs, or in the alternative, that he is entitled to qualified immunity. Plaintiff opposes the motion essentially on the grounds that the evidence he has submitted establishes that the medical care provided by defendant Rohlfing fell below constitutional standards. Defendant has filed a reply, emphasizing that there are no genuine issues of material fact in this case and that under the undisputed facts he is entitled to summary judgment in his favor as a matter of law.

/////

# SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

On December 6, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 28 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Eighth Amendment and Adequate Medical Care

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986);

Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere

'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin, 974 F.2d at 1060.

Finally, mere differences of opinion between a prisoner and prison medical staff as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Defendant's Statement of Undisputed Facts and Evidence

Defendant's statement of undisputed facts is supported by citations to a declaration by defendant Dr. Rohlfing, copies of plaintiff's medical records, plaintiff's civil

1  rights complaint, and plaintiff's civil rights complaint filed against Dr. Rohlfing in a separate
2  action in which he alleged inadequate medical care of an eye condition.  (See Case No. Civ. 05-
3  0164 JAM EFB P.)  Defendant's evidence establishes that plaintiff had appointments with Dr.
4  Rohlfing on March 12, 2003, April 22, 2003, and May 13, 2005.
5  　　　　　On March 12, 2003, Dr. Rohlfing saw plaintiff for his knee and eye conditions.
6  Plaintiff reported that he had right knee problems with periodic pain that was "not bad."
7  Defendant Rohlfing examined plaintiff's knee and found it be essentially normal.  Except for
8  plaintiff's complaint of pain, Dr. Rohlfing observed that there was no swelling of the knee, no
9  significant medial or lateral joint line tenderness, a negative McMurray's test, and knee stability
10 was excellent.  Dr. Rohlfing ordered a six-inch ACE wrap for plaintiff's knee and Motrin for his
11 pain.  He also ordered x-rays of plaintiff's patella and instructed plaintiff on exercises for his
12 knee.  During the same visit, Dr. Rohlfing observed that plaintiff had Schnyder's dystrophy in
13 both of his eyes and ordered Muracel eye drops and artificial tears for him.
14 　　　　　On April 11, 2003, defendant Rohlfing reviewed the x-ray report, which indicated
15 that plaintiff's right knee was normal and did not evidence any gross abnormalities.  Specifically,
16 the x-ray report indicated that plaintiff's knee showed no soft tissue or osseous abnormalities, no
17 evidence of hyperostosis or demineralization, no fractures or dislocations, and no abnormality in
18 the visualized joint spaces.
19 　　　　　On April 22, 2003, defendant Rohlfing saw plaintiff again for his knee and eye
20 conditions.  Plaintiff complained of severe knee pain but, upon examination, Dr. Rohlfing
21 determined that his condition was essentially unchanged.  Defendant Rohlfing could not find
22 anything abnormal about plaintiff's knee and explained that there were no abnormalities reflected
23 by his x-rays. Defendant Rohlfing stressed to plaintiff the importance of exercising his knee
24 which would help them determine the nature of any problem.  However, plaintiff told the doctor
25 he did not want to exercise his knee because it hurt.  Plaintiff also told Dr. Rohlfing that he did
26 not want to refill his prescription for Motrin.  Defendant Rohlfing nevertheless wrote an order

allowing plaintiff to request Motrin for ninety days.  During the same visit, defendant Rohlfing also examined plaintiff's eye condition.

On September 26, 2003, Dr. Rohlfing saw plaintiff for dizziness and his eye condition.  Plaintiff did not complain about his knee at that time.  However, plaintiff did express that he was experiencing some abdominal pain and so Dr. Rohlfing prescribed him Tylenol instead of Motrin.

On May 13, 2005, defendant Rohlfing saw plaintiff in response to an administrative grievance that plaintiff filed regarding the Chrono Committee decision not to authorize him to have an ACE bandage and a knee brace in administrative segregation.  During this visit, plaintiff requested braces for both his knees but Dr. Rohlfing opined that plaintiff's knee condition had not changed and there was nothing indicating that he would benefit from knee braces.  Defendant Rohlfing did not order plaintiff any additional pain medication because plaintiff reported that Tylenol was upsetting his stomach and it was likely that all pain medication would have the same negative side-effect.

Defendant Rohlfing is a board certified orthopedic surgeon.  He was one of four physicians who sat on the Chrono Committee at HDSP that made decisions with respect to requests for orthopedics devices.  Defendant Rohlfing has no recollection of sitting on the committee when it discussed whether plaintiff needed a neoprene knee brace.  An individual physician lacked the authority to provide plaintiff with a neoprene brace because such a request had to be approved by the Chrono Committee.  Similarly, individual physicians lacked the authority to authorize medical services outside of HDSP because the Medical Authorization Review (MAR) Committee of physicians made such decisions.

II.  Defendant's Arguments

Defendant Rohlfing argues that he is entitled to summary judgment because there is no evidence that he was deliberately indifferent to plaintiff's medical needs.  (Def.'s. Mot. for Summ. J. at 5.)  First, he argues that plaintiff has presented no evidence supporting his claim that

his knee condition presented a sufficiently serious medical need. (Id. at 6.) In particular, defendant contends that there is no evidence – clinically or radiographically – that supports plaintiff's claimed need for a knee brace. (Id.) Rather, he argues that plaintiff's knee was stable, was not swollen and that plaintiff had full range of motion. (Id.)

Second, defendant Rohlfing argues that he was not responsible for any harm to plaintiff because he lacked the authority to provide plaintiff with a brace even if he had believed plaintiff needed it. (Def.'s Mot. for Summ. J. at 6-7.)

Finally, defendant Rohlfing argues that there is no evidence that he knew of and disregarded an excessive risk to plaintiff's health. (Def.'s Mot. for Summ. J. at 7.) He contends that the undisputed evidence shows that he never found anything wrong with plaintiff's knee, upon examination or radiographically. (Id.) Defendant notes that, even if his assessment of plaintiff's knee had been incorrect, there is no evidence that he was deliberately indifferent to plaintiff's medical needs. (Id.) Alternatively, defendant Rohlfing argues that he is entitled to qualified immunity. (Def.'s Mot. for Summ. J. at 9-10.) Assuming plaintiff could establish a violation of his constitutional rights, defendant argues that no medical doctor would reasonably believe that opining that a neoprene brace was not necessary for an inmate who had no signs either clinically or radiographically of a need for such a brace would violate a clearly established constitutional right. (Id. at 10.) Defendant contends that his actions were in no way unreasonable or plainly incompetent. (Id.)

III. Plaintiff's Opposition

In a lengthy opposition, plaintiff argues that because the defendant's care amounted to deliberate indifference to his serious medical needs, the court should deny defendant's motion for summary judgment. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3-4.) By way of background, plaintiff explains that, at the time he arrived at High Desert State Prison, he was experiencing severe knee pain which constituted a serious medical condition. (Id. at 5 & 40-

/////

42.)  Although he could walk, plaintiff contends that he was in considerable pain and did not have full range of motion.  (Id. at 6 & 8.)

Plaintiff argues that the facts surrounding the medical care he received are as follows.  On March 12, 2003, he saw defendant Rohlfing and reported the knee pain.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5.)  Plaintiff claims that it was defendant Rohlfing, not plaintiff, who characterized his knee pain as "periodic" and "not bad" at that time.  (Id.)  On April 22, 2003, plaintiff saw Dr. Rohlfing again and reported that his knee pain was "severe" and that he did not have full range of motion.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 7-8.)  Defendant Rohlfing suggested that plaintiff do exercises for his knee, but plaintiff refused to do them because they hurt his knee.  (Id.)

On July 16, 2003, plaintiff saw Dr. Lowell-Brown, who ordered him additional ACE bandage wraps and prescribed him Tylenol.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 9.)  Dr. Lowell-Brown mentioned "chondromalacia" as a possible cause of plaintiff's knee pain.  (Id.)  During a subsequent visit on December 1, 2003, Dr. Lowell-Brown again mentioned chondromalacia and requested a neoprene splint for plaintiff's right knee.  (Id. at 10.)  On January 8, 2004, the chrono committee denied the request.  (Id. at 10.)

On March 2, 2004, plaintiff saw Dr. James.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 9.)  He discontinued plaintiff's Tylenol because plaintiff complained that it did not help his condition.  (Id.)  Dr. James ordered no further treatment.  (Id.)  On April 27, 2004, plaintiff saw Dr. James again and requested additional treatment for his knee but Dr. James only re-ordered Motrin for him.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 12.)  Dr. James also mentioned "arthralgia" as a possible cause of plaintiff's knee pain.  (Id.)

On June 1, 2004, plaintiff saw Dr. Mangis and complained that his knee condition was getting worse.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 13-14.)  Dr. Mangis acknowledged plaintiff's pain but found his knee to be totally normal.  (Id. at 14.)  Dr. Mangis

/////

discontinued plaintiff's Motrin and ordered Naproxen in its place. (Id.) Dr. Mangis also tried unsuccessfully to contact Dr. Rohlfing. (Id.)

On July 23, 2004, plaintiff saw Dr. Dial. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 15.) Dr. Dial requested a knee brace chrono for plaintiff for one year. (Id.) On July 28, 2004, the chrono committee denied the request. (Id.) During a subsequent visit on August 6, 2004, Dr. Dial again requested a knee brace chrono for plaintiff. (Id. at 16.) The chrono committee denied this request as well. (Id. at 16 & 41-42.)

On March 25, 2005, plaintiff saw Dr. James again and requested an ACE wrap, a neoprene knee brace, or other treatment. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 17.) Dr. James merely re-ordered Tylenol for plaintiff and instruct him on non-weight bearing exercises. (Id.)

On May 13, 2005, plaintiff saw defendant Rohlfing. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 19.) Plaintiff contends that Dr. Rohlfing refused to provide him with an ACE wrap or a knee brace because he did not believe that plaintiff's knee would benefit from the devices. (Id.) Plaintiff argues that defendant Rohlfing is a Board certified orthopedic surgeon and the main authority on orthopedics at HDSP. (Id. at 20.) Plaintiff contends that Dr. Rohlfing should have provided him with medical treatment and that Rohlfing's refusal to attempt to explore the use of other treatments, medication, and tests demonstrates his deliberate indifference to plaintiff's medical condition. (Id. at 22 & 46-48.)

Plaintiff notes that when he was subsequently transferred to CSP-Corcoran, where he received an ACE wrap while he waited for his knee brace. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 23.). Plaintiff also underwent an MRI, which showed that he had cysts on his right knee, a possible cause of his knee pain. (Id. at 23.) Plaintiff contends that defendant Rohlfing could have ordered an MRI but was unwilling to provide him with adequate medical care. (Id.)

In closing, plaintiff emphasizes that he has suffered harm as a result of defendant Rohlfing's deliberate indifference. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 26 & 56-59.) For

example, plaintiff notes that the medication defendant Rohlfing prescribed caused him abdominal pain. (Id.) In addition, plaintiff notes that he could not walk without a limp or function normally in any prison activities. (Id. at 26, 29, & 41.)

IV. Defendant's Reply

In reply, defendant Rohlfing argues that plaintiff has still presented no evidence showing that he was deliberately indifferent to his serious medical needs. (Def.'s Reply at 2.) Specifically, defendant Rohlfing argues that plaintiff has provided no evidence either that he needed a neoprene brace or that Dr. Rohlfing was responsible for plaintiff not receiving one. (Id.) Although plaintiff points to the results of a subsequent MRI, defendant contends that there is no evidence that the subchondral cysts existed when he saw plaintiff, that the cysts caused plaintiff's pain, or that the presence of cysts required use of a neoprene brace. (Id.) In this regard, defendant argues that a neoprene brace is merely used to provide warmth to the knee and would not have provided any therapeutic benefit to a patient with subchondral cysts which are generally treated conservatively with the use of an exercise program and a nonsteroidal anti-inflammatory, such as Motrin or Tylenol. (Id. at 3.) Defendant Rohlfing reiterates that plaintiff suffered from no medical condition that would cause his knee to be unstable or otherwise require a brace. (Id.)

**ANALYSIS**

As an initial matter, the court rejects defendant's argument that plaintiff's knee condition is not a serious medical condition. Both parties acknowledge that plaintiff has experienced chronic knee pain over the course of several years. Moreover, the record in this case demonstrates that plaintiff repeatedly sought and received medical care for his knee condition from defendant Rohlfing, Dr. Lowell-Brown, Dr. James, Dr. Mangis, Dr. Dial, and other medical personnel at HDSP. Plaintiff subsequently received additional care from medical personnel at CSP-Corcoran. It is well-established that "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." McGuckin, 974 F.2d at 1059-60. See also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or.1993) (The Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose.") aff'd, 97 F.3d 1458 (9th Cir.1996). Here, plaintiff's medical records, including defendant Rohlfing's observations and treatment recommendations, compel the conclusion that plaintiff's knee presented a serious medical condition. Accordingly, resolution of the pending motion for summary judgment hinges on whether defendant Rohlfing responded to plaintiff's serious medical need with deliberate indifference. Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

The court finds that defendant Rohlfing has borne his initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care he provided to plaintiff for his knee condition. The evidence presented in support of the motion for summary judgment establishes the following. Defendant Rohlfing examined plaintiff's knee during each of his three visits. During plaintiff's March 12, 2003 exam, defendant found that plaintiff's knee was "essentially normal at this time, no swelling, stability appears excellent, no significant medial, lateral joint line tenderness, McMurrray's is negative."[2] (Rohlfing Decl., Ex. A.) Plaintiff complained of "rocks in his knee," but defendant could not identify the source of the feeling described by plaintiff. (Id.) Similarly, during plaintiff's April 22, 2003 visit, defendant Rohlfing found plaintiff's knee "unchanged" and detected nothing abnormal. (Id., Ex. C.) Finally, at plaintiff's May 13, 2005 visit, defendant Rohlfing recorded:
/////

---

[2] A McMurray's test is conducted with the patient lying face upward with his knee fully flexed. The doctor then rotates the patient's foot fully outward and the knee is slowly extended. A painful "click" indicates a tear of the medial meniscus of the knee joint. If a "click" occurs when the foot is rotated inward, it indicates a lateral meniscus tear. In plaintiff's case, defendant Rohlfing declares that no click occurred, so he was able to rule out a medial and lateral tear of the meniscus. (Rohlfing Decl. at 2.)

> I have evaluated these knees before and unable to find any significant objective finding. There is no swelling, nothing that would indicate the knee or benefit from neoprene knee braces. Chronic knee pain without significant objective findings. . . . I have evaluated the knees, I am an expert in this area and I am unable to find anything that would in fact require the use of knee braces. He was told. He was present for the discussion and indicated that he was not happy but he understood.

(Id., Ex. E.)

On March 12, 2003, defendant Rohlfing ordered a diagnostic x-ray in an attempt to determine the underlying cause of plaintiff's knee complaints even though plaintiff's knee exam was normal. The x-rays, taken five days later, were consistent with defendant Rohlfing's initial assessment. The radiologist found "[n]o soft tissue or osseous abnormalities are noted. There is no evidence for hyperostosis or demineralization. No fractures or dislocations are seen. No abnormality is noted in the visualized joint spaces." (Rohlfing Decl., Ex. B.) Defendant Rohlfing explained the x-ray results to plaintiff during his visit on April 22, 2003. (Id., Ex. C.)

Finally, defendant Rohlfing prescribed medically-appropriate pain medication and treatment for plaintiff's knee. For example, during plaintiff's March 12, 2003 visit, defendant Rohlfing prescribed Motrin for plaintiff's pain and provided him with a six-inch ACE wrap. (Rohlfing Decl., Ex. A.) In addition, Dr. Rohlfing advised plaintiff of exercises he could do to help his knee and stressed their importance, explaining that it would help them understand what was happening with plaintiff's knee given the normal x-ray results. (Id., Exs. A & C.) Again, during plaintiff's April 22, 2003 visit, defendant Rohlfing ordered Motrin for ninety days so that plaintiff only needed to request a refill. On September 26, 2003, defendant Rohlfing prescribed Tylenol instead of Motrin because plaintiff complained of an upset stomach. (Id., Ex. D.) Finally, during plaintiff's March 25, 2005 visit, Dr. Rohlfing ordered plaintiff additional Tylenol and instructed plaintiff on non-weight bearing knee extension exercises. (Id., Ex. E.)

Thus, the evidence presented by Dr. Rohlfing reflects that he provided reasonable and medically acceptable care by examining plaintiff's knee, ordered an appropriate diagnostic

test for plaintiff's knee and prescribed pain medication and exercises in treating plaintiff's knee. The burden therefore shifts to plaintiff to establish the existence of a genuine issue of material fact precluding summary judgment in defendant's favor.

The court has considered plaintiff's opposition to the pending motion for summary judgement as well as his complaint. The undersigned finds that plaintiff has failed to submit any evidence establishing a legitimate dispute as to a genuine issue of material fact. Plaintiff merely argues that defendant Rohlfing was deliberately indifferent to his serious medical needs because the doctor refused to order that plaintiff receive a neoprene knee brace. Plaintiff disagrees with the course of treatment he was provided and believes that he needed the neoprene brace because he was experiencing severe chronic knee pain. Plaintiff supports his conclusion by pointing to the fact that other prison doctors requested a knee brace for him, but that as a member of the Chrono Committee defendant Rohlfing would not approve it. Finally, plaintiff notes that, unlike Dr. Rohlfing, medical personnel at CSP-Corcoran ordered an MRI of his knee which revealed the presence of abnormal cysts.

As noted above, it is well established that a mere difference of opinion between a prisoner and prison medical staff does not give rise to a § 1983 claim. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Franklin, 662 F.2d at 1344; see also Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion."). Similarly, a difference of medical opinion between prison doctors does not give rise to a constitutional violation. Toguchi, 391 F.3d at 1059-60 ("Dr. Tackett's contrary view was a difference of medical opinion, which cannot support a claim of deliberate indifference."); Sanchez, 891 F.2d at 242 (difference of opinion between medical personnel regarding the need for surgery does not amount to deliberate indifference to a prisoner's serious medical needs).

/////

1    To establish that a difference of opinion amounted to deliberate indifference, or
2 that an alternative course of treatment should have been pursued, plaintiff must "show that the
3 course of treatment the doctors chose was medically unacceptable under the circumstances" and
4 that "they chose this course in conscious disregard of an excessive risk to [the prisoner's]
5 health." Jackson, 90 F.3d at 332. See also Toguchi, 391 F.3d at 1058.  Here, plaintiff has
6 provided no evidence demonstrating that the course of treatment defendant Rohlfing chose was
7 medically unacceptable.  Nor has plaintiff shown that defendant Rohlfing chose the course of
8 treatment in conscious disregard of an excessive risk to plaintiff's health.  Quite the contrary.  As
9 noted above, plaintiff's medical records show that each time he saw Dr. Rohlfing, he received
10 reasonable medical care.  Defendant Rohlfing based his medical opinion on the facts then
11 available to him, including his physical examinations of plaintiff's knee and plaintiff's x-rays,
12 which indicated no abnormalities.  Even assuming, as plaintiff contends, that defendant Rohlfing
13 knew of Dr. Lowell-Brown and Dr. Dial's requests that plaintiff receive a knee brace, Dr.
14 Rohlfing determined that exercise and pain medication was the proper course of treatment.
15 Defendant Rohlfing's medical judgment that a knee brace would not be part of the appropriate
16 treatment for plaintiff's knee, without more, does not constitute deliberate indifference.  See
17 Toguchi, 391 F.3d at 1060 (Deliberate indifference is a high legal standard.  A showing of
18 medical malpractice or negligence is insufficient to establish a constitutional deprivation under
19 the Eighth Amendment.")

   Accordingly, based on the evidence submitted in connection with the pending
21 motion, the court concludes that defendant Rohlfing is entitled to judgment in his favor.[3]
22 /////
23 /////

---

[3] Given the recommendation that defendant Rohlfing's motion be granted, the court need not reach either defendant's arguments that he is entitled to qualified immunity or that the court should stay this case pending the resolution of a separate action brought by plaintiff.

## OTHER MATTERS

Defendant has requested that the court take judicial notice of plaintiff's complaint filed in this action, defendant's answer filed in this action, and plaintiff's complaint filed in Case No. S-05-0164 JAM EFB P. Defendant has also requested the court take judicial notice of the fact that in the medical profession the word "subjective" is a term of art meaning "perceived only by the affected individual and not by the examiner." (Def.'s. Req. Judicial Not.)

Judicial notice of adjudicative facts is appropriate with respect to matters that are beyond reasonable dispute in that they are either generally known or capable of accurate and ready determination by resort to a source whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201 and advisory committee notes. Defendant's requests for judicial notice will be denied.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendant's January 25, 2008 request for judicial notice is denied as unnecessary; and

2. Defendant's April 28, 2008 request for judicial notice is denied as unnecessary.

IT IS HEREBY RECOMMENDED that:

1. Defendant's January 25, 2008 motion for summary judgment be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////

1 that failure to file objections within the specified time may waive the right to appeal the District
2 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: May 16, 2008.

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
will0437.57